Tariq Ahmad
3550 Barron Way Suite 13a
Reno, NV 89511
Phone: 775 333 6626
Fax:    775 333 0225
Plaintiff Pro Per

FILED
U.S. DISTRICT COURT

2015 JUN -2  ⊃ 2: 43

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF UTAH

| | |
|---|---|
| TARIQ AHMAD,<br><br>Plaintiff,<br><br>ZECO SERVICES LLC, a Utah Limited Liability Company, COLONY INSURANCE Company, a George  Corporation,  Mitchell F. Garrick, an individual, William L. Reynolds, an individual and Does 1 thru 20 inclusive<br><br><br>Defendants. | **COMPLAINT FOR**<br><br>1.  NEGLEGENCE<br>2.  FRAUD<br>3.  BAD FAITH<br><br>JURY DEMAND<br><br>Case: 2:15cv00394<br>Assigned To : Benson, Dee<br>Assign. Date : 6/2/2015<br>Description: Ahmad v. ZECO Services et a l |

## COMPLAINT

Plaintiff, TARIQ AHMAD ("Ahmad") for causes of action against Defendants ZECO

Services LLC, ("ZECO"),   Colony Insurance Company   ("Colony"), Garrick F. Mitchell,

("Garrick"), William L. Reynolds,   and does 1 thru 20, alleges and states as follows:

### Parties and Jurisdiction

1.      Plaintiff Ahmad is an individual resident of the county of Washoe, State of Nevada.

2.      Defendant ZECO Equipment LLC, is a Utah Limited Liability Company, operating

in the State of Utah under various names, including Zimmerman Equipment Company and others

unknown to plaintiff.

3.      Defendant Colony Insurance Company, ("Colony") is a Georgia Corporation that is

conducting business in the state of Utah as an insurance company.

4.      Defendant Garrick F. Mitchell, ("Garrick") is a Mechanical Engineer, who is a

resident of the State of Colorado and was retained by Colony to prepare an accident report.

5.      Defendant William L. Reynolds    is an individual, who is a resident of the State of

Utah.

## JURISDICTION

Federal Jurisdiction is proper as the amount in controversy exceeds $75,000.00.

## VENUE

6.      Venue is proper in this jurisdiction as acts complained of occurred in the State of

Utah.

Each of the defendants sued herein, whether designated by a real or a fictitious name was

and is the agent, servant, employee and hireling of each other.

## **Factual Background**

7.      Plaintiff is a 1978 graduate of the Colorado School of Mines, with a degree in

Petroleum Engineering and is an owner as a working interest owner in the Greentown Unit, Grand

County, Utah, which includes the Greentown 32-421A well.   Plaintiff is a Certified Petroleum

Professional by the Society of Petroleum Engineers, registered Professional Petroleum Engineer,

Associate Member of the American Association of Petroleum Geologist and has over 34 years of

experience in drilling and production of oil and natural gas.    Plaintiff is a life member of the

Nevada Petroleum Society and author of numerous Petroleum Engineering studies.

8.      Beginning June 6, 2014, Defendant ZECO provided a Gas Buster for the drilling of

the Well to the operator of the Well.

8.      On or about June 16, 2014, the Gas Buster, provided by ZECO, exploded;

thereafter all drilling operations on the Well were suspended for two days, causing damages in

2

excess of $150,000 in costs until the exploded Gas Buster was replaced.

10.     ZECO demanded payment for providing equipment to the operator of the well, but failed to take any responsibility for the explosion of its equipment.

11.     Operator of the well filed a claim with Colony; Colony thereafter retained the services of Garrick to prepare a fraudulent report exonerating ZECO from any and all liability.

12.     Operator of the Well and Plaintiff provided all documentation to ZECO for damages caused by the ZECO equipment.

13.     ZECO's attorney, William Reynolds via letter dated November 11, 2014, Exhibit 1, stated "Greentown/Pacific or its agents destroyed the gas buster by driving the forks of a lift through the same."   This statement was an admission by ZECO, as only ZECO had a fork lift at the Well, said fork lift was under the custody and control of ZECO.

14.     ZECO was informed by the operator that only forklift on location was owned and operated by ZECO and its employees.

15.     Plaintiff further provided photographs to ZECO, proving that the Gas Buster was shipped damaged to the Well.   See Exhibit 2.

16.     Garrick allegedly made a written report wherein he falsely stated "that the Operator of the Well had refused to place a check valve on the flow line between the Gas Buster and the flare."   Said statement was made without any investigation and disregarded the physical evidence that proved that the Gas Buster was defective when it was shipped by ZECO and that ZECO had damaged the Gas Buster using its own Fork Lift.

COUNT I
NEGLIGENCE

Plaintiff realleges paragraph 1 through 16 and further alleges and states as follows:

17.     Defendant ZECO breached its duty of care to Plaintiff by, among other things:

(a) Failing to inspect the Gas Buster prior to installing it at the Well.

(b) Failing to test the Gas Buster prior to installing it at the Well ;

( c) Failing to provide competent persons to supervise the operation of the Gas Buster;

( d) Failing to install a check valve on the flare line from the Gas Buster to the Flare on the Well;

(e)   Installing the Gas Buster on the Well, knowing that the Gas Buster was defective as shown on the photograph of the "Gas Buster Before the Explosion" and "After the Explosion."

18.     Plaintiff is entitled to damages as is allowed by law from the date of the occurrence giving rise to this cause of action including the cost down time from the Date of the Gas Buster Explosion until the repair of the Gas Buster two days later which amount exceeds $150,000

COUNT II
FRAUD
(Against all defendants)

Plaintiff realleges paragraph 1 through 16 of his general allegations and paragraphs 16 through 18 of Count I and further alleges and states as follows:

19.     Defendant ZECO knowingly and willfully shipped a defective Gas Buster to the Well, thus not only endangering the operation of the drilling of the well but life and property as well.

20.     Defendant ZECO knew that the Gas Buster was damaged when ZECO shipped the Gas Buster to the Well, tried to cover up its liability by alleging that the Gas Buster was damaged by a fork lift at the Well.    Even though ZECO knew all the time that the only fork lift on location

4

at the well with extending forks was operated by ZECO.

21.     Defendant Colony knew that the Gas Buster was defective and thus Colony was subject to the insurance claim by the owners of the Well, however even knowing the facts, Colony retained the services of a hired gun, Garrick to lie on his engineering report exonerating ZECO and itself from any and all liability.

22.     Defendant Garrick prepared a fraudulent report, while he knew that the Gas Buster was defective when it was shipped to the Well.   Garrick further knew that ZECO had claimed that the Gas Buster explosion was caused by a Fork Lift, which in truth and fact was owned by ZECO. All the while knowing the facts, Garrick prepared a fraudulent report wherein he lied when he stated that the operator had refused to place a check valve.

23.     Defendant Reynolds, filed liens on the well, knowing that the cause of the explosion was due to the damaged Gas Buster provided by ZECO and further even while admitting that the Gas Buster was damaged by a fork lift, operated by ZECO, continued to make allegations which have no basis in truth or fact.

24.     Plaintiff is entitled to damages as is allowed by law from the date of the occurrence giving rise to this cause of action including the cost down time from the Date of the Gas Buster Explosion until the repair of the Gas Buster two days later which is over $150,000.

25.     Plaintiff is entitled to treble damages as the acts complained of here were done with malice and fraud.

## COUNT III
## Bad Faith

Plaintiff realleges paragraph 1 through 16 of his general allegations and paragraphs 16 through 18 of Count I, paragraphs 18 thru 25 of Count II and further alleges and states as follows:

26.     At all times Colony acted in Bad faith when it knowingly and willfully retained the

services of Garrick, the hired gun who for money would write any report that Colony wanted.

27.    Colony knew that Garrick had lied on his report when Garrick stated that the Operator had refused to install a check valve.

28.    Colony knew that the position taken by ZECO was that the Gas Buster was damaged by a fork lift that was owned and operated by ZECO.

29.    Colony knew that the photographs of the Gas Buster before and after the explosion proved that ZECO had provided defective Gas Buster, but Colony completely disregarded the facts and retained the services of a hired gun Garrick, who wrote a report that Colony knew to be incorrect.

30.    Because Colony acted in Bad faith in evaluating the claim, Plaintiff is entitled to exemplary damaged to make an example of Colony.

## COUNT V
## MALPRACTICE

Plaintiff realleges paragraph 1 through 16 of his general allegations and paragraphs 16 through 18 of Count I, paragraphs 18 thru 25 of Count II, and further alleges and states as follows:

31.    Defendant Garrick owed a duty of care, faithfulness, skill and reasonableness in preparing the engineering report which was to determine the cause of the explosion on the Gas Buster, he failed to do so by among other as follows:

a.    Failing to interview anyone other than ZECO employees;

b.    Failing to review the photographic evidence that showed the Gas Buster to be defective prior to the explosion;

c.    Failing to take the admission of ZECO that the Gas Buster was damaged by a Forklift which was owned and operated by ZECO.

d.    Preparing an engineering report which was false on its face.

e.      Failing to conduct any engineering calculations to determine the cause of the explosion.

f.      Preparing a report without any regards for the facts and engineering data.

31.     Due to the actions of Garrick, Plaintiff is entitled to both economic and compensatory damages in excess of $150,000.

WHEREFORE, Plaintiff prays that it recover a judgment against defendants and each of them as follows:

1.      The cost of this action;

2.      Actual damages exceeding $150,000 to be proven at trial;

3.      Treble damages against all defendants for committing fraud;

4.      Exemplary Damages against   Colony for $10 million to make an example of colony;

3.      Prejudgment and post judgment interest as provided by law;

4.      Such other and further relief as to which the Court deems just and proper.

Dated this 2nd day of June , 2015.

Tariq Ahmad Pro Per
3550 Barron Way Suite 13a
Reno, NV 89511

EXHIBIT 1

EXHIBIT 1

## Sam & Reynolds, a Professional Corporation

*Attorneys and Counselors at Law*

Daniel S. Sam *
William L. Reynolds
Jordan R. Van Oostendorp

319 West 100 South, Suite A
Vernal, Utah 84078
(435) 789-1301
Fax: 789-1344
www.srelaw.net
*Also licensed in Colorado

November 11, 2014

PACIFIC ENERGY & MINING COMPANY
Attn: Tariq Ahmad
3550 Barron Way, Suite 13a
Reno, NV 89511

      Re:    ZECO Equipment, LLC / Greentown 32-42-1a

Dear Mr. Ahmad:

Our firm has been retained in regards to a dispute concerning unpaid invoices. I have reviewed your correspondence dated August 20, 2014. I believe your assessment of ZECO Equipment, LLC's (or "Zeco") invoices and its rights to collect to be flawed in many respects. Nevertheless, I will seek to address each of your articulated concerns. Taking the invoices in the order set forth in your correspondence, Zeco's response is as follows:

### Invoice Z-13904

You assert that the entire balance of the invoice should be stricken on the basis that the invoice represents rig-up charges. However, in so doing you ignore the other provisions of the parties' agreement. In the miscellaneous section of the proposal agreed upon it is noted that "operator provides: man camp, light tower & generator." These items were not provided by Greentown Oil (hereinafter "Greentown") or Pacific Energy & Mining Company (hereinafter "Pacific"). Due to Greentown / Pacific's breach of the agreement it was necessary for Zeco to rent the same from a third party. As an attempt to compromise, my client will waive everything but the actual third-party expenses of $4,600.00 it incurred by reason of Greentown / Pacific's breach of the agreement. The balance of $4,600.00 on Invoice Z-13904 needs to be paid immediately.

### Invoice Z-13840

Your assessment of this invoice also requires a selective reading of the contract and an omission of the fact that the daily tickets were signed by your vice president. Your correspondence objects on three bases. First, you believe that OBM rate can only be charged when your decide OBM has commenced. The OBM rate is a level of service which requires the presence of Zeco personnel. This was explained throughly to your representatives. Zeco personnel were contacted at at 11:00 p.m. and directed to mobilize and begin the dewater process. They did as they were directed. This is the OBM level of service and you were properly billed. Dan Green acknowledged the same and signed the Rig Report with the OBM rate. Had their been any issues Zeco would not have continued with the OBM level of services.

Correspondence to Pacific Energy
November 11, 2014
Page 2

Your correspondence also objects to the $550 in equipment fees. As is stated above, in the miscellaneous section of the proposal agreed upon it is noted that "operator provides: man camp, light tower & generator." These items were not provided by Greentown or Pacific. Due to Greentown / Pacific's breach of the agreement it was necessary for Zeco to rent the same from a third party. Dan Green acknowledged the same and signed the Rig Report with the equipment expenses which were merely the rates Zeco were paying a third party.

Lastly, your correspondence objects to the per diem. You are correct that the per diem was not part of the original bid because the proposal called for Greentown / Pacific to "provide[s]: man camp, light tower & generator." A man camp was provided but it was insufficient for the level of personnel on site and required three individuals to sleep on the floor. This is unacceptable on many levels, did not meet the terms of the agreement, and as a result the Zeco techs were required to find lodging elsewhere. Thus, the per diem was fair and proper. Dan Green acknowledged the same and signed the Rig Report with the per diem. In short, all charges set forth in Invoice Z-13840 are proper and must be paid.

Invoice Z-13902

Your correspondence objects to these charges on the basis that the gas buster was punctured and needed to be replaced. Greentown / Pacific or its agents destroyed the gas buster by driving the forks of a lift through the same. The charges in the invoice are legitimate. Charges for trucking and obtaining new equipment were both requested and required. The payment authorization was approved and signed by Dan Green. Had Greentown / Pacific taken the position you are now taking, the services who not have been provided. The invoice is legitimate and needs to be paid in full. Furthermore, Zeco needs to be compensated for the destroyed equipment. I have attached a quote for the replacement cost of the 26' Gas Buster.

Invoice Z-13903

Your correspondence objects to the per diem. As noted above, the proposal called for Greentown / Pacific to "provide[s]: man camp, light tower & generator." A man camp was provided, but it was insufficient for the level of personnel on site and required three individuals to sleep on the floor. This was unacceptable on many levels, did not meet the terms of the agreement, and as a result the Zeco techs were required to find lodging elsewhere. Thus the per diem was fair and proper. Dan Green acknowledged the same and signed the Rig Report with the per diem.

Please make arrangements to pay the outstanding invoices immediately. If suitable arrangements are not made within the next ten (10) days I have been instructed to file a lien and to proceed with litigation to foreclose the same.

Sincerely,

William L. Reynolds
Attorney for ZECO Equipment, LLC

Quote

# Zimmerman Engineering Co.

257 S 800 E   Vernal, Utah
Phone (435) 781-0454

Date : 10/31/14
To:  Zimmerman Equipment
Attn: Paul
Quote.#  0157

**Thank you for the opportunity to quote the following items.**

### 26' Gas Buster

- 1/4" A-36 carbon steel vessel
- 1/4" ASME style domed heads
- 10" x .375 sq.tube base skid
- 9" x .375 sq.tube telescoping legs
- 6" choke line
- 12" Vent line
- 10" Inlet
- 8" Drain
- 3/8" floor plate working platform with handrails and kick plate
- 3 ea. 3/8" perforated baffle plates
- 2 ea. 24" round manway's with cover plate
- Sandblast and paint.

Vessel to be air pressure tested with spot radiograph as per API 650 std.

| | |
|---|---|
| Price Materials | $42,780 |
| Labor | $41,250 |
| Sandblast & Paint | $4,500 |
| Radiograph | $900 |
| | |
| **Total Cost** | **$89,430** |

(All items F.O.B   Vernal, Utah)

EXHIBIT 2



mark on vessel

Tear on vessel

This is before the explosion
Taken on June 10, 2014

This is after the explosion
Taken on June 26, 2014